Good morning. Frank Washer on behalf of the appellants. I'd like to concentrate first on what I think is probably the central issue in the case, and that is whether we have an administrative search scheme that we're dealing with here. And I think it's clear, at least to me, that it is an administrative search scheme and it's an unreasonable one per se. What we're talking about is a fair return, a standard return that for many, many years the City of San Jose never required any kind of production of records in terms of being able to obtain the standard return. Now this new ordinance that's been adopted says that to get the standard return, not something over and above the standard return, the apartment owners have to produce certain records, and those records are really quite intrusive. One of the things that we have mentioned that part of the ordinance is that the ordinance itself specifically states that the records that are going to be produced are records that are going to be used to see if there is in fact compliance with the rent control ordinance in general. So it seems to me that what we have here is, taken apart from the issue of the standard return, if the City of San Jose had not enacted this ordinance and they wanted to get these records, it would seem to me they would have had to go through the normal type of administrative subpoena process, request them if they were... But Council, you know, my question on this is, putting aside what the analysis would be if there had been a subpoena or they had come on your client's properties, it's hard for me to see how simply requiring your clients to submit information is a search for Fourth Amendment purposes. And it just doesn't strike me that the cases that you cite establish that being required to submit information to the government qualifies as a search for Fourth Amendment analysis. Well, it seems to me that if one looks at it only from a privacy standpoint, if what you're saying, Judge Bennett, is that these are not this type of information, not the type of information, such as in the San Francisco Apartment Association case, was not something that really one would think one has a reasonable expectation of privacy. I think there's some plausibility to the argument, and I don't concede it because I think there's an argument that we've made around that. But I think under the property-based approach, the approach that was adopted by this circuit in the Ombong case, in the Patel versus City of Los Angeles case... And if the government asks for it, sure, the government can go and ask for it, and if they don't, then they have to go through some kind of a normal judicial process or prejudicial review process by way of an administrative subpoena. What I would say is that I don't see how these records are any less protected than what was protected under Patel. It seems to me that the amount of information that's being asked here by the government is far more than what was asked for in Patel. In Patel, what we had was the motel registers, which only had, when you check into a motel, the name of the guest, the address of the guest, the license plate number. Didn't you have, in Patel, an actual physical intrusion? But I think that is not the basis, the sole basis of the administrative search doctrine that Patel used. And I think Judge Watford obviously wrote, in my view, a very, very cogent opinion. Good position to take. But it seems to me that the Airbnb case that we cited, which uses and builds on Judge Watford's decision, along with the Supreme Court decision that affirmed it, talks about two prongs to the property-based approach. One is, as Your Honor says, Judge Bennett, as you say, Judge Bennett, where the police come on or the government comes on physically onto the property and wants to physically intrude on some property for purposes of the property-based approach. That's a physical trespass onto the property. That's certainly the approach I think the framers would have taken to the Fourth Amendment. I think there's a problem with limiting it to that. First of all, I think both the en banc opinion in Patel and, as Airbnb points out, talks about it in terms of, and there's another approach, which is the line of cases that talk about it in terms of an administrative subpoena process. And that is a production of documents, a production of information, and that the trespass or property-based approach can be also applies to that. Now, what Your Honor says as far as the framers, I think that's an interesting question because, of course, Justice Scalia's opinion in U.S. v. Jones and Florida v. Jardine were physical trespasses. They physically had the GPS device attached to the car. Jardine, they physically come onto the property. But the cases we cited, and I use the cases that Judge Watford cited in the en banc opinion, the Hale v. Henkel case and the Boyd v. United States case, those cases date back to 1886 and, I believe, 1907 or so. And I find it very, very difficult to square those cases with anything but the property-based approach because Katz v. United States was not decided until 1967. And so we did not have an alternative test under the reasonable expectation of privacy until late in the or the second half of the 20th century. So those cases had to be based on a property-based approach. And the way I read those cases, the way I read Judge Watford's opinion, those cases talk about it in terms of a compelled production of documents. A compelled production of information is the equivalent of a physical trespass. And that is protected under the original approach of the framers. I think the thing that you're maybe over-reading Patel for is that there the only problem was the inability to get pre-compliance judicial review. It wasn't that the information was shielded from government eyes. I didn't hear you, Your Honor. I'm sorry. That's okay. It's my fault. I'm a little under the weather myself today. In Patel, the problem was that your clients didn't have any kind of access to pre-compliance judicial review. It was not that the information that was in their possession was for the government was forbidden to get access to it. It was the particular mechanism by which the city of Los Angeles tried to compel getting access to that. Here, it seems to me, we don't have that same concern because you can. You are, I assume, getting access to pre-compliance judicial review. If you don't think your client should have to turn that over, the information over before being penalized, you can come to court. You're here. We're listening to you. But Patel didn't say anything about that information being walled off from the government's eyes. Well, I think Patel obviously is an extreme case where the government was compelling it by way of criminal sanctions. And, of course, I – It was not even the criminal sanctions. I think that's what you're missing. It was that your client could have been arrested on the spot for not allowing an officer to barge into their offices and pry through their records. There was no ability to go to a neutral decision-maker like a judge and have the judge rule on whether the request was proper or not. You have that ability here. So it seems to me the deficiency that we identified in Patel is completely absent from this scheme. Well, but once again, if the information is protected under the Fourth Amendment under the property-based approach, then the question then comes up, of course, is what the second step is. And it's Your Honor saying in terms of the process. But the argument here is that conditioning the right to obtain an increase during that time that one has to go to court on the production of the records, that, it seems to me, then puts the cart before the horse. That, in one sense, says, okay, you're going to have to either force it in a court of law first or you're going to have to waive your Fourth Amendment rights. And that, I don't think, is the right approach. I think the right approach is if the government can't get those records without some kind of administrative subpoena process, that is an unconstitutional condition. It's not what Your Honor is saying is looking at it outside the conditional process, looking at it from the standpoint of pre-compliance review only. The pre-compliance review argument is taking the records independent of the conditions that the government has attached to it. But when you get into the unconstitutional condition, Your Honor. The Fourth Amendment does not grant your clients a right to prevent the government from gaining access to the information that it wants. If it did, I would understand where you're coming from. But the Fourth Amendment does not say that you are in all circumstances entitled to shield that information from the government's review. But I think under the unconstitutional conditions doctrine, Your Honor, respectfully, as I read it, as I understand it, if the government is conditioning you to say, okay, the benefit you are going to get is conditioned upon you waiving that right. Nobody is asking your clients to waive any right. The only right you have is to come to court and have a neutral decision maker decide whether your client should have to turn over the information before you do so. And you're here. You're getting that opportunity. Nobody has thrown your clients in jail because they haven't turned over the information yet. Well, I think, once again, what the government is saying is that we're denying you the benefit. There may be cases, of course, where somebody is unable to come to court. Or there may be cases in which there may be a conflict in the amount of information. But to say that the burden now is on you to come to court and because you can come to court, that is not somehow an unconstitutional condition. I think that turns it around, turns it on its head. Let me ask you this. I guess what I don't understand about your position is that if you're right, why, for example, can the government require disclosure of all sorts of information in connection with tax returns for a business? It's just they've set up a regulatory scheme for which they need information. And it seems to me they're not – the demand here is not intruding in any way on your Fourth Amendment rights any more than it is when you have to file incredibly detailed tax returns and disclose all sorts of information about your business operations that you probably don't necessarily want to. Well, there is some authority, although obviously it's not followed in terms of tax returns that there aren't some Fourth Amendment rights. But I think in those cases what you're dealing with is the special needs doctrine. So when the government has a special need for the information, then obviously there is a lowered Fourth Amendment expectation. And the government does have a right to ask that without having to go through any kind of a formal process, per se, of going through a warrant or a subpoena or whatever, although obviously the government does do that statutorily. So I think that that is a distinct question. And that has not been argued in the briefs here, whether this applies to the special needs doctrine. What has been simply argued here is we don't have an administrative search scheme, and I think that is just totally wrong. I think we do have an administrative search scheme. Now, whether that search scheme is reasonable is also a distinct question. But it seems to me that what we have is records, business records, of business owners that have independent Fourth Amendment protection or some kind of Fourth Amendment protection. And the government cannot condition that in terms of denying them the benefits, saying that we're not going to give you the benefits. There are some people who will take the steps that Your Honor says and come to court. There are some people who will not. There will be some people who don't know about their rights to come to court. But the question is, is whether the conditions that are attached here to that benefit being conferred can be somehow by waiving the Fourth Amendment rights. I wanted to ask you about an ordinance provision you cited and quoted in your brief, but then after that it wasn't really addressed. And that's 17.23600D, use of personal information, which reads in part, personally identifying information about tenants and tenant households received by the city pursuant to this section shall be used for investigation and prosecution of violations of the municipal code or other applicable laws. What's the significance of that provision with respect to your claims? I mean, again, you've cited it and then never really addressed it ever again. So does it even apply here? Well, you know, I'm not arguing that this is a criminal search scheme. So that was placed, I believe, in our – it was placed in the original brief, but it was part of the fact that I'm arguing this administrative search scheme. But it seems to me that adds weight to the fact that this is not simply the government saying that we are looking here for standard records for determining whether, in fact, you're entitled to a rental increase, a rent increase. This is really an end run around having to do what they would normally have to do in terms of getting the information by saying clearly that we're going to use this information for what is really intended. And the information that is really intended has nothing to do with fair return, nothing to do with standard return. It has everything to do with regulation of rent control, which can be a very salutary goal, but regulation of rent control with criminal penalties. So there are criminal penalties that can attach. A property owner may feel that he doesn't have the means to go to court or he doesn't have the ability to go to court, doesn't have the time to go to court. He gives up that information and then finds himself in the middle of a dispute with the government on whether he, in fact, complied with the rent control ordinance. So I think it is very, very relevant. So you think that if the city just sent out on an annual basis an administrative subpoena to every landlord who's covered by the rent control ordinance and said, please produce the following, you know, whatever, however many categories of information, that that would be okay? Well, you know, I don't think, you know, if we're arguing, Your Honor, with the issue about what the litigation costs or what the eventual results will be, the effect will be, I think that's a distinct question. I think Justice Sotomayor. What's the answer to my question? Would it be okay in your view? I think that it would be a very rare thing for all the property owners to be disputing. I think that just as it was in the. I'm asking you just to imagine a different sort of regulatory scheme in which the city, in order to obtain the exact same information that's at issue here, simply issued an individualized administrative subpoena to every single landlord who's covered by the rent control ordinance and said, each year on January 1st, please disclose to us the following 10 categories or however many categories of information. Would that be okay? I think that, as you would find in, let's say, in the motel tax area, in the transidocracy tax area, there's usually a scheme which allows a request for production of documents. If they're not produced, then there's some kind of appeal hearing process, and then that appeal hearing process then can go to court as far as an appeal. It doesn't have to end up where the initial response by the government is that they're going to have to send out administrative subpoenas. But I don't think that is totally analogous here where, once again, the government is conditioning a benefit and saying, you're not going to get the standard increase that you always got. We're not talking here about a fair return over and above the standard increase. The Pinell case, interestingly enough, Pinell versus City of San Jose, the syllabus starts out with the fact that there was a standard 8 percent rent increase, and the whole issue was, over and above that, the fair return process, whether it was reasonable, and then what is the process for determining reasonability. It has always been determined in all rent control laws up to now that the standard increase just goes along with being a property owner. Why should a property owner have to give up information that he would not normally do and that he did not historically do for 20, 30 years just to get a standard return on his property that the city recognized? This is not something that we're asking to impose on the city. So I think that is a distinct difference here. And I don't think we have here a group of apartment owners who ever intended to challenge this ordinance or come into court and have to waste their time in a court challenge. But this was imposed on them. And I think that this ordinance goes too far, and I think the consequences of the government being able to take information by way of this kind of a scheme can have a lot of unintended consequences, not just for apartment owners, not just for motel owners, but for a lot of businesses. So I would ask that the court consider that if, in fact, this is going to be a published opinion, that a rule is adopted here that finds some kind of a fair middle course on the matter, because I don't think businesses want to just be able to have to give up information that they have always considered to be their private business information. Now, there was the argument made in the San Francisco case, and that has been made by the city by my esteemed colleague, Ms. Laskowska, that this type of information is anyway given up. I believe Judge Tallman said in the San Francisco case that buy-sell agreements, buy-out agreements, this is the type of stuff you give to financial institutions. But in the motel case, that kind of information, motel registers are standard. They are given up when motels are sold. But that's the owner's right to determine whether they have the right to keep it or exclude it. And that I think they do not give up just because the government has a salutary goal of rent control. So I do think we do have an administrative search scheme, and I would respectfully submit we have an unconstitutional conditions question. Okay, thank you. We'll give you a couple of minutes for rebuttal. Let's hear from the city. Good morning, Your Honors. Margo Laskowska for the city of San Jose. May it please the Court. The plaintiff's threat-bearer factual allegations in their first amended complaint do not state a plausible violation of any constitutional clause. I would like to address the argument that the landlords are entitled to a fair return. Actually, they are entitled to a reasonable return on their investment, and even if they do not comply with the rent registry provisions, they still are allowed to apply and obtain the reasonable return on investment. There is state case law that says if the landlord cures the rent registry noncompliance, they are entitled to a fair return on their investment. So in our circumstances, they don't even have to cure it. In our ordinance, they are, as long as they apply for it, provide information required under the fair return provisions, that would constitute a substantial compliance with our rent registry provisions, and they will be able to get a fair return. What is the stick, so to speak, that you use to compel compliance? There's some penalty, I assume, if a landlord doesn't comply. If they do not submit sufficient information to register under the rent registry provisions, there is a fine. I'd like to also address opposing counsel's argument that the ordinance says that records must be produced, and that's incorrect. It is purely information that needs to be provided. The ordinance, neither the ordinance nor the regulations require production of any pieces of paper. The ordinance requires very limited information. I mean, there's nothing in the ordinance that requires the production of any preexisting pieces of paper. Yes, yes, that's right, Your Honor, yes. They can fill out a form and submit that. They can do it online. They can even come in person and not fill out anything, just provide the information in person. Also, I'd like to address the counsel's argument that, historically, landlords did not need to do anything in order to get an annual standard increase in rent. There is no guarantee that businesses that are regulated and rental properties are quite heavily regulated in California. So there is no guarantee that businesses that are regulated are not going to be regulated to a greater extent if there is such public need. And cities are operating under the government police powers. This is a purely business regulatory ordinance. And even Civil Code Section 1947.7, California Civil Code, refers to rent registries and contemplates that cities will require information from landlords and specifically refer to tenant information, tenant-specific information, and that civil code is referenced in our ordinance and it provides that the city can compel landlords to produce tenant names, but those names are supposed to be confidential. So the city can compel landlords to provide them. The city is supposed to keep those names confidential, not to disseminate them or distribute them. The city cannot compel but can request all other information concerning tenants. You said that in your brief and it just struck me as not accurate. You sort of suggested that, well, compliance is voluntary with the information demands, and that's not right. It seems to me a couple of minutes ago you said it's not voluntary. It's compelled by virtue of a fine. That's correct, Your Honor. I reread my brief and I realized that that's not a completely accurate statement. We are, the cities are allowed to compel compliance, but they're not allowed to compel information. That's other than the name of the tenant. Any other information concerning the tenants we cannot compel. You are compelling a whole lot of information beyond the tenant's name. Yes. So obviously state law must permit that, or you're admitting that you're in violation of state law? No, no, no. Okay, so I don't understand. Why did you say what you said in your brief? It just struck me as wildly inaccurate. The compliance is voluntary in the sense that any other, excuse me, information concerning tenants aside from tenant names. We can compel the tenant names, but even aside from that, tenant names are not something that's confidential. You're saying that the only thing his clients are required to produce to you are the names of the tenants living in their buildings, and everything else beyond that is voluntary? No. Okay, then what are you saying? You're just confusing me even more from what you said earlier. I'm saying that state law allows us to compel tenant names. And aside from that, our position is that all the other information concerning the apartments, for example, the address, the number of bedrooms, whether the unit is metered, sub-metered, or un-metered, is a matter of public record. The information concerning tenancy, the tenant name is not anything that's confidential. The date of the new tenancy, the amount of rent, housing services including in the rent, the amount of security deposit paid, these are matters that are also of public record. But, counsel, although I'm not sure how much this matters to the legal issues, when I look at the regulations, I mean, this section on the content of the registration form, it lists ten categories of information, and it says the registration form shall include the following information as of the date specified on the form. So there's a lot more that the landlords have to put on the registration form other than just the name of the tenant. Yes, Your Honor. But our ordinance, and also the civil code, the section that I mentioned before, says that a landlord can be deemed to be in substantial compliance with those requirements, and will not be subject to any repercussions. So as long as they provide certain elements that are enough for us to determine whether they are complying with rent control, then they are subject to those requirements. Then we will consider them to be in compliance, and we will not fine them. And they will be allowed to raise rent under the annual 5% increase without providing any other documents. I wanted also to address the Fourth Amendment argument, Your Honors. The allegation that the documents are private, or that the information is private, is conclusory and insufficient to state a claim. Basically, the complaint is devoid of any additional information to determine that these indeed are documents or information that is kept by these landlords subjectively, that is protected by them and not disclosed. The information you're demanding is not publicly available. If it were, you wouldn't have to demand it. You could just go get it yourself. I do understand where your opponent is coming from. It's not information that's just sort of freely out there in the world. It's contained in presumably business records that they don't let the general public have access to. It is generally available. For example, addresses of the rental properties and number of bedrooms, for example, and whether they're metered or unmetered, would be in publicly recorded documents concerning those properties. But because there are nearly 45,000 rental units subject to this ordinance, and there is no way for the landlord to have access to those properties, there is no way for the landlord to have access to those properties. And there are nearly 3,000 landlords that are subject to this ordinance. As a matter of regulation, it's reasonable to request that information from the landlords. And it's only once a year, and it's only or even less than a year if there is no turnover in tenancies. And only limited, those limited items of information. I also wanted to address Judge Lee's question concerning the provision in Section No. 17-23-600-D. That section has to do with enforcement of any kind of lawful or unlawful use of property. So, for example, under our rent control ordinance, landlords are only allowed to evict for cause, or when the tenant leaves voluntarily, they are allowed to raise rent to market rate. So, if they evict the tenant for cause, then they can raise the rent to market, or if the tenant leaves voluntarily, they can do that, too. So, that provision, D, which talks about we will use the tenant's name and their information, while keeping it confidential, there is a sentence at the end, we are going to only use it for purposes related to enforcement of eviction laws. So, because the concern, the reason why this ordinance has been enacted recently, why the rent registry has been enacted, because the rent control ordinance has been enforced since 1979, was that, and it's in the excerpts of record, was that the city was noticing that a lot of apartments where the rent was raised to market rate, but the city was getting very little notices from landlords that they were evicting tenants for cause, and under that section, 17.23.600, landlords are required to provide the city with this information, whether the tenant left voluntarily or whether was evicted for cause. And so, there is this potential for abuse of these eviction laws, and that's why the rent registry is very necessary in order to help the city to monitor whether this ordinance is being complied with. Your honors, if your honors have no other questions, I would like to close by saying that the city requests the court to affirm the judgment. Okay. Thank you, counsel. Let's put two minutes on the clock for rebuttal, if you'd like, or you don't have to take it, but if you'd like to. I'll speak on the brief, your honor. Thank you very much. Dealing with the civil code section 1947.7, I think that actually works in favor of the apartment owners. It seems to me that section clearly states on its face that the state of California had a concern, especially as to tenants, that the information there does raise privacy concerns. And so, the section states clearly on its face that the ordinances that are adopted by the cities cannot require and compel information other than tenants' names. But this ordinance does a lot more than that, and it was cited in our brief, of course, in the excerpts of record. But I'll be very brief. The regulations of section 4.05, the address, the occupancy status, if occupied, the commencement date of the current tenancy, the history of the rent charge for use in occupancy, the amount of security deposit. And this bothers me, the number of tenants occupying the units. It's not just and the tenants' names. It's not just the tenants' names, but the number of people occupying there. It seems to me that that is not information that one can just go to a public website and find out. So it seems to me this information is private, even from an expectation of privacy standpoint, but certainly from a business record standpoint. And just as Patel indicated, there were customer lists. The motel registers were, as I read it, if I read it correctly, Your Honor, the motel registers were somewhat similar to businesses' customer lists. It seems to me knowing the amount of security deposit you're holding and the number of tenants that are occupying the unit you're leasing out or renting out is a business record that a business owner does not necessarily want to divulge. And I still maintain, although I know there's some dispute here by the amici about the tenants' rights, but I still maintain that there are tenants who will not want to divulge how many people are living in their units in terms of that. And I think in the atmosphere we live in today, those records getting into the wrong hands could have very, very deleterious consequences. So I would submit that we do have a constitutional interest involved here and that there has to be some line drawn that this ordinance, at least, goes too far. Okay. Thank you very much. Thank you.
judges: Watford, Bennett, Lee